## In re The SELLAS CORPORATION d/b/a Don's Ornamental Iron, Debtor.

### Bankruptcy No. 86–5097.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 10, 1987.

Ronald R. Swartz, Thomas Long, Barnett, Bolt & Kirkwood, Tampa, Fla., for debtor.

## ORDER ON MOTION TO DETERMINE SECURED STATUS

ALEXANDER L. PASKAY, Chief Judge.

The matters under consideration in this Chapter 11 case are a Motion to Determine Secured Status and a Motion to Determine the Value of the Collateral. The Motions are filed by the Sellas Corporation d/b/a Don's Ornamental Iron (Debtor) and by Dominic Ficarrotta (Ficarrotta) who claims to be a secured creditor. The Court has considered the Motions, together with the record and arguments of counsel and now finds and concludes as follows:

In 1983, Ficarrotta sold all the assets of his dissolved corporation, Don's Ornamental Iron, Inc. in which he and possibly his wife were the sole stockholders, to the Debtor. The purchase price of this purchase was $200,000. The balance of the purchase price which remained unpaid was secured by a promissory note in the amount of $70,000.00, executed on January 4, 1983, by the Debtor; and a Security Agreement which granted a security interest to Mr. and Mrs. Ficarrotta in the assets involved in the sale. A UCC–1 Financing Statement was properly executed and was recorded with the office of the Secretary of State. The UCC–1 form was also recorded in the office of the Clerk of the Circuit

Court, Hillsborough County, Florida, in O.R. Book 4048, Page 935. The sale did not include the business premises owned by Mr. and Mrs. Ficarrotta individually. The Debtor thereafter leased the premises from Mr. and Mrs. Ficarrotta. It is without dispute that Ficarrotta perfected an interest in the collateral described in the security agreement.

 The description of the collateral in which Ficarrotta claims to have perfected a security interest purported to include the real property leased by the Debtor for an unexplained reason. This collateral is described in paragraphs 3 and 4 of the Financing Statement and reads as follows:

3. All furniture, fixtures, leasehold improvements equipment, machinery, tools, motor vehicles, inventory and work in progress now owned or subsequently acquired by Debtor.

4. Lots 18–21 of O'Berry's Industrial Sites, according to the plat thereof as the same is recorded in Plat Book 27 on Page 80 of the public records of Hillsborough County. (sic).

Of course, it should have been clear to anyone that one cannot grant and create an interest in real estate by a security agreement. This can only be done by a properly executed mortgage which is properly recorded in the public records.

On December 30, 1986, Mr. and Mrs. Ficarrotta signed a handwritten letter which on its face appears to terminate their security interest originally granted by the Debtor. This letter reads in pertinent part as follows:

The Sellas Corporation has vacated the building at 3510 East Columbus Drive, Tampa, Florida 33605, and by agreement of both parties the lease has been broken.

The purpose of this letter is the termination of Financing Statement recorded in O.R. 4048, Page 935.

The letter is, without a doubt, ambiguous simply because it is not clear whether Ficarrotta intended to terminate only the so called security interest in the real property (sic) or also the lien on the collateral described in the Financing Statement as well.

The Debtor maintains that the letter was intended to terminate the security interest and the lien on the collateral described in the Financing Statement and that Ficarrotta is no longer holding a valid lien on the Debtor's assets. The basis for this contention is that the Financing Statement recorded in the public records of Hillsborough County, Florida refers to the same Financing Statement which was recorded in the office of the Florida Secretary of State. Therefore, by terminating the interest in the collateral described in the statement recorded in Hillsborough County, Claimant effectively terminated the security interest recorded with the Secretary of State.

In opposition Ficarrotta contends that the letter mentioned was intended only to terminate the interest in the real property of Ficarrotta and therefore he still has a valid lien on the chattels described in the Financing Statement. The basis of his argument is that he executed the letter only to enable him to deliver a clear title to the purchaser to whom he sold the real property and which was no longer occupied by the Debtor. He maintains that the letter was never intended to terminate the lien on the tangible assets of the Debtor

Based on the evidence this Court is satisfied that the parties intended to terminate only the lien which attached the title to the real property which was also a lien owned by the Debtor and which he was about to sell. The letter of December 30, 1986, was executed on the same day as the closing on the sale of the real property. The letter states that the Debtor's leasehold interest in the property was terminated; that the premises had been vacated and that the Financing Statement recorded in Hillsborough County was also terminated. The letter was used for purposes of the closing. It is quite evident that the parties intended to invalidate the lien only with respect to the real property so that clear title could be conveyed. Therefore, the Court finds and concludes that Claimant has a valid lien against the Debtor's chattels.

 This leaves for consideration the determination of valuation of the collateral.

Ficarrotta inspected the shop equipment on July 23, 1987. His detailed and itemized valuation of the property was based on the amount that the property could be sold for today and as stated by him is worth $8,070.00. The breakdown item by item indicates that this figure includes two trucks valued at a total of $2,000.00. There is no doubt that Ficarrotta does not have a valid lien on the trucks. Based on the foregoing, the Court finds that the total value of the collateral is $8,070.00 from which the $2,000.00 value of the trucks must be deducted.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that Ficarrotta has perfected security interest in the shop equipment of the Debtor. It is further

ORDERED, ADJUDGED AND DE-CREED that the shop equipment is valued at $6,070.00.

### Addendum No. 1

| | |
|---|---|
| 1 Small punch press | $ 50.00 |
| 1 Hosefield Benders with parts | 250.00 |
| 1 Table grinder | 20.00 |
| 1 Heavy duty grinder with stand | 100.00 |
| 1 Anvil | 50.00 |
| 2 Portable welders | 600.00 |
| 3 Portable Heaters | 75.00 |
| 2 Miller Welding Machines | 100.00 |
| 1 NCG Welding Machine | 50.00 |
| 1 D.C. 200 cuo Unit P. & H. Welder | 250.00 |
| 1 N.C.G. Chemtron heavy duty welder | 250.00 |
| 1 Nibbler | 50.00 |
| 1 Core Drilling machines with 2 drills (bit) | 75.00 |
| 1 portable cut off saw | 50.00 |
| 1 aluminum cut off saw | 50.00 |
| 2 Heavy duty cut off saws for steel | 500.00 |
| 5 Hand drill, hammer and screw guns | 125.00 |
| 1 Bar twister | 350.00 |
| 2 Hobart welders | 100.00 |
| 1 Table saw (Sears) | 75.00 |
| 1 Air compressor | 250.00 |
| 2 Drill presses | 200.00 |
| 2 Dvorak shear and punch & shear machines | 700.00 |
| 1 # 10 Bateman punch & shears with punches | 400.00 |
| 1 Portable generator | 50.00 |
| 1 Hand shear on stand | 50.00 |
| 2 Scroll benders | 500.00 |
| 1 1973 (1 ton) Chevy truck | 500.00 |
| 1 1981 (1 ton) GMC (sierra) trucks | 1500.00 |
| 4 Heavy Duty Grinders | 100.00 |
| 1 Mig Welder | 250.00 |
| 4 4X10 Steel Tables for Fabrication | 400.00 |
| TOTAL | $8070.00 |